IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


TIMOTHY DEWAYNE GULLETT,                    :

      Plaintiff,                          :

v.                                          :   CIVIL ACTION 11-00095-CB-C

RICHARD WAUGH, et al.,                      :

      Defendants.                         :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis, filed a complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' Motion for Summary Judgment.  (Doc. 33).  For the reasons stated below, it is recommended that Defendants' Motion for Summary Judgment be granted and that Plaintiff's claims against Defendants Richard Waugh, Alex King and Tony Barlow be dismissed.

## I.  SUMMARY OF ALLEGATIONS

On October 11, 2010, Plaintiff was a pretrial detainee in the Dallas County Jail charged with attempted murder.  (Doc. 1, p. 4; Doc. 32, p. 1).  Defendant Richard Waugh is a Corrections Officer at the Dallas County Jail and as such is employed by the Sheriff of Dallas County.  (Doc. 32, pp. 1, 9).  Defendant Alex King is a Corrections Officer Sergeant at the Dallas County Jail and as such is employed by the Sheriff of Dallas County.  (Id.).  At the time of the incident made the subject of Plaintiff's complaint,

Defendant Tony Barlow was a Corrections Officer at the Dallas County Jail and as such was employed by the Sheriff of Dallas County.  (Id.).

On October 11, 2010, Plaintiff was moved from "B Block," a newer part of the Dallas County Jail, to "3 West" in the older part of the jail.  (Doc. 32, p. 2).  Plaintiff objected to the move because he did not get along with the inmates in 3 West.  (Doc. 1, pp. 5-6; Doc. 36, pp. 1-2).  According to Plaintiff, he had no problems with anyone in B Block.  (Doc. 35, p. 2).[1]  That afternoon, Plaintiff was jumped and assaulted by several inmates in 3 West.  (Doc. 1, pp. 5-6).  Plaintiff told an officer making rounds in 3 West that he needed to be moved because his hand was hurt, and the officer noticed that Plaintiff's face was bleeding and he had knots on his forehead.  (Doc. 32, p. 2).  Plaintiff was removed from his cell and taken to the nurse.  (Id.).  He reported that he had been attacked by an inmate and that about four other guys jumped him.  (Id.).  He was then transferred to the emergency room, treated, released, and returned to the jail.  (Id.).  X-rays at the emergency room showed a fracture to his hand.  (Doc. 32, p. 3).[2]

Plaintiff received physical therapy on his hand from November 15 to December 28, 2010.  (Id.).  Plaintiff was seen by the doctor on January 19, 2011.  (Doc. 32, p. 5). During this visit, a corrections officer witnessed Plaintiff passing love letters, tobacco, Tylenol, and Motrin to another inmate.  (Id.).  After the altercation, Plaintiff was placed in a single cell, which he refers to as "the hole," for approximately three to five months.

---

[1] Defendants dispute this allegation.  According to Defendants, Plaintiff was moved "because corrections officers had become aware of tensions, unrest, and threats of violence involving Gullett and another inmate in B Block."  (Doc. 32, p. 2).  However, for purposes of summary judgment, Plaintiff's allegation must be taken as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[2]  It is unclear whether the fracture seen on the x-rays was sustained in the October 11 altercation or whether it was the same fracture Plaintiff had sustained in an earlier altercation on March 23, 2010.  (Doc. 32, p. 3).

(Doc. 1, pp. 4-5; Doc. 32, p. 5).  The single cell in which he was placed was an approximate 15 foot by 15 foot room with a bunk, a toilet, and a sink.  (Doc. 32, p. 5). The Dallas County Jail has adopted a policy and procedure directive regarding these single (isolation) cells.  (Doc. 32, p. 5).  The directive states that it is jail policy to place inmates in single cells "to separate an inmate from other inmates to prevent him/her from injuring himself/herself or others, to prevent other inmates from injuring him/her; … to provide accessible observation of a resident who is suspected of having impending medical or psychological problems."  (Doc. 32, pp. 5-6).

On February 23, 2011, Plaintiff filed his Prisoner Complaint [For Inmate Action] Under 42 U.S.C. § 1983.  (Doc. 1).  Based upon the foregoing facts, Plaintiff alleges that Defendants Corrections Officer Richard Waugh,[3] Corrections Officer Sergeant Alex King, and former Corrections Officer Tony Barlow violated his constitutional right to be free from cruel and unusual punishment by knowingly and deliberately disregarding his safety and by putting him in "the hole" for three to five months.  (Id. at pp. 5-6).  Plaintiff seeks injunctive and monetary relief.  (Id. at p. 7).

In their Answer and Special Report, Defendants deny Plaintiff's claims and assert the affirmative defenses of Eleventh Amendment immunity and qualified immunity. (Docs. 25 and 32).  Plaintiff has filed several documents in opposition to Defendants' special report  (Docs. 31, 35, and 36), and Defendants have filed affidavits in support of their position (Doc. 32).  On August 1, 2012, the Court filed an order converting Defendants' Special Report to a motion for summary judgment.  (Doc. 33).

---

[3] In his complaint, Plaintiff identified Richard Waugh as "Officer Walt," but obviously was mistaken as to this Defendant's name and intended to name Richard Waugh as a Defendant.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing [substantive] law."  Id.; accord Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Moreover, "what is considered to be the 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes."  Cottrell v. Caldwell, 85 F.3d 1480, 1486 (11th Cir. 1996).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992).  The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fitzpatrick v. City of Atlanta, 2

F.3d 1112, 1115 (11th Cir. 1993); Tipton, 965 F.2d at 998-99.   In addition to demonstrating that there is no genuine issue of material fact, the movant must also satisfy the ultimate burden of persuasion on the claim by showing that it would be entitled to a directed verdict at trial.  See Fitzpatrick, 2 F.3d at 1116.

Once the movant satisfies its initial burden under Rule 56(c), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e))(emphasis omitted).  Although "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," Anderson, 477 U.S. at 255, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587.

Moreover, the non-movant "bears the burden of coming forward with sufficient evidence on each element that must be proved."  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).  If "a party...fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against that party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

III.  DISCUSSION

In this action, Plaintiff seeks redress for an alleged constitutional deprivation

pursuant to 42 U.S.C. § 1983.  Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.  For the
> purposes of this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the District of
> Columbia.

42 U.S.C. § 1983 (1994).  Specifically, Plaintiff alleges that the Defendants' act of

moving him from one part of the jail where he was safe to another part of the jail with

inmates with whom he did not get along constituted cruel and unusual punishment.[4]  He

also alleges that Defendants violated his constitutional right to be free from cruel and

unusual punishment by placing him in a single cell for three to five months.  Plaintiff

seeks (1) $60,000.00 in monetary damages and (2) an injunction requiring that

Defendants be fired from their jobs.  (Doc. 1, p.7 ("…would like for the court to grant I

Timothy DeWayne Gullett about $60,000.00 Thousand dollars and take away they

job.")).

---

[4] Because Plaintiff was a pretrial detainee at the time the acts giving rise to this claim
occurred, his claim alleging cruel and unusual punishment sounds properly in the
Fourteenth Amendment right to due process rather than in the Eight Amendment.  See
Taylor v. Adams, 221 F.3d 1254, 1257 n.3 (11th Cir. 2000); Lancaster v. Monroe
County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); Hale v. Tallapoosa County, 50 F.3d
1579, 1582 n.4 (11th Cir. 1995); Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th
Cir. 1985).  Nevertheless, his claim that Defendants were deliberately indifferent to a
substantial risk of serious harm is analyzed the same regardless of whether it arises under
the Due Process Clause of the Fourteenth Amendment or under the Eighth Amendment.
Id.  Accordingly, the Court can rely upon both Eighth Amendment and Fourteenth
Amendment cases in ruling upon Defendants' Motion for Summary Judgment.  Id.

### A. <u>OFFICIAL CAPACITY CLAIMS</u>

Plaintiff has not indicated whether he is suing Defendants in their official or individual capacities.  Assuming Plaintiff intended to sue Defendants in their official capacities, those claims would fail.  The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state."  <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment."  <u>Id</u>. (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 (1985)). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989).

Plaintiff alleges that Defendants, all of whom were employed by the Dallas County Sheriff as corrections officers at the Dallas County Jail at the time of the incidents alleged in the complaint, acted with deliberate indifference for his safety and improperly placed him in a single cell while he was incarcerated at the Dallas County Jail.  "[A]n Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail."  <u>Turquitt v. Jefferson County</u>, 137 F.3d 1285, 1288 (11th Cir.), <u>cert. denied</u>, 525 U.S. 874 (1998).  It is well settled in this circuit that Alabama sheriffs are executive officers of the state and that a suit against a sheriff in his official capacity is the equivalent of a suit against the state.  <u>See</u> <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th

Cir. 1989).  "[T]he state is considered the real party in interest because an award of damages would be paid by the state."  Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir. 1990).  Accordingly, suits against Alabama sheriffs in their official capacities are generally barred by the Eleventh Amendment.  See Taylor v. Adams, 221 F.3d 1254, 1256 (11th Cir. 2000); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997); Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); Free, 887 F.2d at 1557.  In Lancaster, this immunity was extended to correctional officers employed by county sheriffs.  Lancaster, 116 F.3d at 1429-31.

The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against state officials sued in their official capacity.  The first exception is when a state has waived its Eleventh Amendment sovereign immunity and has consented to suit in federal court.  Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985).  This exception does not apply here, however, because the State of Alabama has not waived its immunity to suit in § 1983 cases.  See Alabama v. Pugh, 438 U.S. 781, 782 (1978).  The Alabama Constitution explicitly states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. I, § 14.  The second exception is when Congress has properly abrogated sovereign immunity through its powers under the Fourteenth Amendment; however, such an abrogation has not occurred with respect to § 1983 claims.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 55-73 (1996); Carr, 916 F.2d at 1525.  Lastly, under the doctrine of Ex parte Young, the Eleventh Amendment does not bar § 1983 actions against state officials which seek prospective injunctive relief to end continuing violations of federal law.  See Ex parte Young, 209 U.S. 123, 155-56 (1908); see also Seminole Tribe of Fla., 517 U.S. at 73

(quoting Green v. Mansour, 474 U.S. 64, 68 (1985)); Summit Med. Assoc. v. Pryor, 180 F.3d 1326, 1336 (11th Cir. 1999).  As noted in Summit Medical, "[b]ecause of the important interests of federalism and state sovereignty implicated by Ex parte Young ... the doctrine is not without limitations."  180 F.3d at 1337.  One limitation, which is relevant to this action, is that "the Ex parte Young doctrine applies only to ongoing and continuous violations of federal law."  Id. (citing Papasan v. Allain, 478 U.S. 265, 277-78 (1986)); see infra p. 10.  [A] plaintiff may not use the doctrine to adjudicate the legality of past conduct."  Id.

Applying the foregoing tenets of law to the instant case, it is clear that Plaintiff's claim for monetary relief against Defendants, in their official capacities, is due to be dismissed.  Defendants were all employed by the Dallas County Sheriff as employees of the sheriff's department.  These Defendants clearly represent the state with regard to their duties concerning the operation of the Dallas County Jail.  The Court finds that any claim made by Plaintiff against these Defendants in their official capacities concerns duties they were entrusted to perform on behalf of the state; therefore, they are entitled to Eleventh Amendment immunity from Plaintiff's claim for monetary damages.  See, e.g. Lancaster, 116 F.3d at 1429-30 (holding that jailers are state officials entitled to the same Eleventh Amendment immunity as the sheriff because they are responsible to the sheriff for their performance of state-mandated duties.)  Accordingly, Plaintiff's claim for monetary damages against Defendants in their official capacities is due to be dismissed.[5]

---

[5]  By definition, only "persons" may be sued for a constitutional deprivation under § 1983.  42 U.S.C. § 1983 (1994).  In Will, 491 U.S. at 71, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" with regard to claims for damages.   Therefore, Defendants, in their official capacities, are not subject to suit for monetary damages under § 1983 for this reason as well.

**B. <u>INJUNCTIVE RELIEF</u>**

Assuming that Plaintiff's request that this Court take away Defendants' jobs is a claim for equitable relief, it is also due to be dismissed.  Plaintiff's request that this Court fire Defendants is barred as moot because Plaintiff is no longer incarcerated at the Dallas County Jail.  He is now incarcerated at Donaldson Correctional Facility in Bessemer, Alabama.  There is no evidence that Plaintiff will be returning to the Dallas County Jail. In <u>Spears v. Thigpen</u>, 846 F.2d 1327, 1328 (11th Cir. 1988), the court held that a prisoner's claim for injunctive relief relating to conditions at a particular facility becomes moot when the prisoner is transferred to another facility because a case or controversy no longer exists.  Moreover, there is no evidence of "any continuing, present injury or real and immediate threat of repeated injury" to Plaintiff from these Defendants.  <u>See</u> <u>Cotteral v. Paul</u>, 755 F.2d 777, 780 (11th Cir. 1985); <u>Dudley v. Stewart</u>, 724 F.2d 1493, 1494 (11th Cir. 1984).

To the extent Plaintiff seeks an injunction on behalf of other unnamed inmates currently incarcerated in the Dallas County Jail, his claim also fails.  Plaintiff's attempt to procure injunctive relief on behalf of unnamed inmates is an impermissible attempt to assert third party rights in federal court.  The standing doctrine frowns upon Plaintiff's attempt to assert rights for others outside the context of a class action lawsuit.  Generally, "a litigant must assert his own legal rights and interests and may not ordinarily rely on the rights and interests of third parties."  <u>Harris v. Evans</u>, 20 F.3d 1118, 1121 (11th Cir.), <u>cert. denied</u>, 513 U.S. 1045 (1994).  "The prohibition against third-party standing promotes the fundamental purpose of the standing requirement by ensuring that the courts hear only concrete disputes between interested litigants who will frame the issues

properly." Id. (citing Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 220-21 (1974)).  Inmates presently housed at the Dallas County Jail can assert their own constitutional rights should they choose to do so.  See Harris, 20 F.3d at 1124.

Accordingly, Plaintiff's claim for injunctive relief against Defendants is due to be dismissed.

## C.  INDIVIDUAL CAPACITY CLAIMS

As discussed above, Plaintiff alleges that Defendants violated his constitutional rights by being deliberately indifferent to a substantial risk of serious harm to him and by placing him in a single cell for three to five months.  Defendants argue that they are entitled to qualified immunity, or in the alternative, summary judgment in their favor as a matter of law.

Qualified immunity protects government actors from liability, when performing discretionary functions, to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In Lassiter v. Alabama A&M University, 28 F.3d 1146 (11th Cir. 1994), the Eleventh Circuit restated the principles governing qualified immunity cases:

> That qualified immunity protects government actors is the usual rule; **only in exceptional cases will government actors have no shield against claims made against them in their individual capacities**. ... Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.

28 F.3d at 1149 (internal footnote and citations omitted) (bold added).

1.  **Discretionary Authority**

The defendant has the initial burden of proving that he acted within the scope of his discretionary authority.  Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).  To determine whether a defendant acted within the scope of his discretionary authority, the court must consider whether the actions of which the plaintiff complains "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Id. at 1566 (quoting Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).  Thus, the term "discretionary authority" in this context includes actions that not only entail an element of discretion but also those actions that are more ministerial in nature. See id.  Accordingly, discretionary authority will generally be found if the defendant is working within the confines of his or her job.

In this case, Plaintiff alleges that Defendants did not provide for his safety while he was incarcerated after he told them that he did not get along with the inmates in 3 West and they moved him there anyway.  He also alleges that Defendants violated his rights by placing him in a single cell.  Each of the named Defendants had some level of responsibility as part of the general duties of his job to provide inmates reasonably safe conditions at the Dallas County Jail.  Their alleged actions, or failure to act,  in this case were, accordingly, within the scope of their discretionary authority.  Indeed, Plaintiff does not contest that Defendants were acting within the scope of their discretionary authority.

2.  **Violation of Constitutional Right**

Because Defendants have met the burden of proving that they acted within the scope of their discretionary authority, Plaintiff now has the burden of proving that the

actions of Defendants violated clearly established constitutional rights of which a reasonable person would have known.  See Harlow, 457 U.S. at 818; Lassiter, 28 F.3d at 1150 n.3.  As explained by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), the "threshold question" to determine whether Defendants are entitled to qualified immunity is as follows:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendants'] conduct violated a constitutional right?"  Saucier, 533 U.S. at 201; see also Siegert v. Gilley, 500 U.S. 226, 232 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all").   While the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), found that the Saucier procedure is discretionary, rather than mandatory, the Court finds application of the procedure beneficial in this case.

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by placing him in 3 West after he told them that he and the inmates in 3 West did not get along and then by placing him in a single cell after he was assaulted.  In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Supreme Court reiterated a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. ... The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs --

> e.g., food, clothing, shelter, medical care, and reasonable
> safety -- it transgresses the substantive limits on state action
> set by the Eighth Amendment and the Due Process Clause.

489 U.S. at 199-200 (citations omitted).  The Eighth Amendment provides that,

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and

unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment

proscription of cruel and unusual punishment prohibits prison officials from exhibiting

deliberate indifference to a substantial risk of serious harm to an inmate.  Farmer v.

Brennan, 511 U.S. 825, 832-34 (1994).  Likewise, the Due Process Clause of the

Fourteenth Amendment prohibits prison officials from exhibiting deliberate indifference

to a substantial risk of serious harm to a pretrial detainee.  See Hale v. Tallapoosa

County, 50 F.3d 1579, 1582 n.4 (11th Cir. 1995); Hamm v. DeKalb County, 774 F.2d

1567, 1574 (11th Cir. 1985).

　　　In order to prevail on an Eighth Amendment claim, an inmate must make both an

objective and a subjective showing.  In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994),

the court delineated the objective and subjective portions of an Eighth Amendment claim

as follows:

> An Eighth Amendment claim is said to have two
> components, an objective component, which inquires
> whether the alleged wrongdoing was objectively harmful
> enough to establish a constitutional violation, and a
> subjective component, which inquires whether the officials
> acted with a sufficiently culpable state of mind.

25 F.3d at 983.  To prevail on a constitutional claim like the one asserted by Plaintiff, a

pretrial detainee must prove that there was "a substantial risk of serious harm," that the

defendants were subjectively deliberately indifferent to that risk, and causation.  Hale, 50

F.3d at 1582; see also Farmer, 511 U.S. at 832-34.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner."  LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993).  This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'"  Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency …, but must be balanced against competing penological goals."  LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind."  Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  Farmer, 511 U.S. at 834 (quotation and citation omitted).  In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety.  Id. (citations omitted).  In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold … that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.  The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.  Id. at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not … ." Farmer, 511 U.S. at 838.  It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.  See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'"  Farmer, 511 U.S. at 844-45 (citations omitted).  "[A] prison custodian is not the guarantor of a prisoner's safety."  Purcell ex rel. Morgan v. Toombs Cnty., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted).  "[N]ot … every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 511 U.S. at 834.  A prison official's duty under the Eighth Amendment is to ensure "reasonable safety"  under the conditions inherent in a jail setting.  See Farmer, 511 U.S. at 844-45.

**a.  Failure to Protect Claim**

Having set forth the general legal principles applicable to Plaintiff's claim, this Court must now determine whether Plaintiff has alleged facts, when "[t]aken in the light most favorable to [him]," that defeat Defendants' qualified immunity defense.[6]  To defeat Defendants' qualified immunity defense, Plaintiff must have sufficiently alleged that he

---

[6] Defendants have clearly alleged facts and submitted affidavits in support of those facts showing that they were not deliberately indifferent to a substantial risk of  serious harm to Plaintiff.  (Doc. 32 and its exhibits).  According to Defendants, Plaintiff was moved to 3 West from B Block  because they had become aware of tensions, unrest, and threats of violence involving Plaintiff and another inmate.  (Doc. 32, p. 2).  However, Plaintiff claims that he did not have a problem with anyone in B Block.  Plaintiff and Defendants agree that Plaintiff objected to the move because he did not get along with some of the inmates in 3 West, but he did not tell the officers of any specific threat made toward him. (Doc. 1, pp. 5-6; Doc. 32, p.2).

was at substantial risk of serious harm and that Defendants were subjectively deliberately indifferent to that risk.  Plaintiff alleges that he did not get along with the inmates in 3 West and that the inmates in 3 West did not like him.  Although he makes a conclusory allegation that his life was in danger, Plaintiff has provided no facts in support of such a conclusion.[7]  Mere conclusory allegations, "in the absence of supporting evidence, are insufficient to withstand summary judgment."  Holifield v. Reno, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997).  He has not alleged that any specific threat was made toward him nor has he alleged any specific negative past history that he had with anyone in 3 West.  His injuries were limited to minor bumps and scrapes and the aggravation of a hand injury he suffered in an earlier jail fight.  See infra n. 8.  These vague and conclusory allegations do not support a finding that Plaintiff was at substantial risk of serious harm.

These vague allegations certainly do not demonstrate that Defendants were deliberately indifferent to any substantial risk of serious harm.  To prevail on his claim, Plaintiff must allege sufficient facts to show that Defendants knew of an excessive risk to Plaintiff and disregarded the risk.  Farmer, 511 U.S. at 837.  As noted above, although Plaintiff complained that he did not get along with inmates in 3 West, he did not allege nor did he tell Defendants about any specific threat he had received, about any particular inmate who had threatened him, or about when any threat was made.  Plaintiff's statement that he didn't get along with inmates in 3 West was too vague, general, and conclusory to give Defendants actual knowledge of a real and serious threat to Plaintiff's safety.  Not every injury suffered by an inmate at the hands of another inmate results in constitutional liability for correctional officers.  See Farmer, 511 U.S. at 834.  In this

---

[7] This allegation was **not** made in his complaint, but in a letter he wrote to the Court in opposition to Defendants' Motion for Summary Judgment.  (Doc. 36, p.1).

case, Plaintiff's vague and conclusory allegations are not sufficient to defeat Defendants'

qualified immunity defense.

**b. <u>Confinement to Single Cell Claim</u>**

Plaintiff also claims that his constitutional right to be free of cruel and unusual

punishment under the Eighth and Fourteenth Amendments was violated when Defendants

placed him in a single cell for "three to five months."  Defendants have asserted that they

are entitled to qualified immunity.  Having determined above that Defendants were acting

within their discretionary authority, the threshold question is whether the facts, taken in

the light most favorable to Plaintiff, show that Defendants' conduct violated a

constitutional right.  <u>See</u> discussion <u>supra</u> p. 13.  "The 'cruel and unusual punishments'

standard [of the Eighth Amendment] applies to the conditions of a prisoner's

confinement."  <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing <u>Rhodes</u>

<u>v. Chapman</u>, 452 U.S. 337, 345-46 (1981)).  As noted above, in <u>DeShaney</u>, 489 U.S. at

199-200, the United States Supreme Court stated that if a state "fails to provide for [an

incarcerated person's] basic human needs -- *e.g.*, food, clothing, shelter, medical care,

and reasonable safety -- it transgresses the substantive limits on state action set by the

Eighth Amendment and the Due Process Clause."  The Eighth Amendment, however,

"does not authorize judicial reconsideration of 'every governmental action affecting the

interests or well-being of a prisoner.'"  <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11th

Cir. 1999) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1988)).  Furthermore, "the

Constitution does not mandate comfortable prisons." <u>Rhodes,</u> 452 U.S. at 349.  The

Eighth Amendment proscribes those prison conditions which "shock[] the conscience,"

involve the "wanton and unnecessary infliction of pain," or which are "grossly

disproportionate to the severity of the crime warranting imprisonment." Id. at 347; Shely v. Dugger, 833 F.2d 1420, 1429 (11th Cir. 1987).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need. Chandler, 379 F.3d at 1289 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). A prisoner must prove the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289-90 (quoting Hudson, 503 U.S. at 9). The challenged condition must be "extreme." Id. Although an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33 (1993), he must at the very least show that a condition of his confinement pose[s] "an unreasonable risk of serious damage to his future health" or safety, id. at 35. Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Id. at 36.

Second, the inmate must prove that the prison official was subjectively "deliberately indifferent" to a substantial risk of harm. Farmer, 511 U.S. at 828-29. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. Id. at 844. "[A] plaintiff must also show that the constitutional violation caused his injuries." Marsh v.

Butler County, Ala., 268 F. 3d 1014, 1028 (11th Cir. 2001) (en banc) (alteration in original).

Having set forth the general legal principles applicable to Plaintiff's claim, the Court now turns to the facts.   In his complaint, Plaintiff alleges that Defendants placed him "in the hole" for "three to five months" while he was incarcerated at the Dallas County Jail.  (Doc. 1, p. 4-5).  He claims that they would only let him take a shower once a week during that time.  (Doc. 35, p. 1-2).  Defendants offer additional uncontested facts.  Plaintiff was in an altercation at the Dallas County Jail on March 23, 2010 in which he sustained a fracture to the fourth metacarpal of his left hand. (Id. at 3). On October 11, 2010, he was involved in the altercation which led to the instant action.  X-rays taken on October 11, 2010, revealed a fracture of the fourth metacarpal head with questionable non-displaced fracture through the fifth metacarpal head of the left hand. (Id. at Ex. C).  It is unclear whether this was a reinjury of the previous fracture or a new fracture.

According to Defendants, Plaintiff was confined to a single cell following his return from the hospital on October 11, 2010 because of the injury or reinjury to his hand and his inability to get along with fellow inmates regardless of where he was housed at the Dallas County Jail.[8]  (Doc. 32, p. 3).  The single cell, which Plaintiff refers to as "the

---

[8] Jail records indicate a long history of Plaintiff's inability to get along with others when incarcerated at the Dallas County Jail on various occasions.  On October 3, 1988, Plaintiff complained of problems with another inmate and asked to be moved.  According to a disciplinary report dated March 17, 1993, he was fighting with another inmate and was placed in a single cell for 30 days.  An incident report dated July 2, 1993, stated that several inmates had reported that Plaintiff had been bullying them, that they couldn't get along with him, and that they were afraid of him.  In January of 1994, he filed a request form objecting to being moved because he did not get along with other inmates and, in October of 1996, he was involved in another altercation with inmates.  On March 23,

hole," is an approximate 15 foot by 15 foot room with a bunk, a toilet, and a sink.  (Id. at

5).  Plaintiff  received physical therapy for his injury from November 15, 2010 to

December 28, 2010.  (Id.).  Plaintiff was told that he would be let out of the single cell as

soon as his hand healed more.  (Id. at 5).  On January 19, 2011, a corrections officer

witnessed Plaintiff passing love letters, tobacco, Tylenol, and Motrin to another inmate

during a doctor's call in violation of jail rules.  (Id.).  Plaintiff filed a prisoner request

form on January 24, 2011, asking "to go to population on [his] own risk."  (Id.).  During

his time in the single cell, Plaintiff's privileges were not taken away from him.  (Id. at 6).

It is not clear exactly when Plaintiff was moved from the single cell; however, Plaintiff

claims it was no longer than five months.  Plaintiff does not claim that he was injured in

any way as a result of his placement in the single cell.

 "It is clear that administrative segregation and solitary confinement do not, in and

of themselves, constitute cruel and unusual punishment."  Shely, 833 F.2d at 1429.

Plaintiff does not allege that he was deprived of adequate food, medical care, exercise, or

sanitation.  Simply stated, Plaintiff's allegations related to his treatment at the Dallas

County Jail do not amount to the denial of a basic human need, see DeShaney, 489 U.S.

at 199-200, nor do they evidence a deliberate indifference to a substantial risk of serious

harm to plaintiff's health or safety.  See Farmer, 511 U.S. at 837-38.  Plaintiff has made

no allegations nor submitted any medical records or facts evidencing any physical or

mental injury or infirmity arising from being placed in a single cell.  Plaintiff has

certainly not alleged prison conditions that "involve the wanton and unnecessary

infliction of pain."  Rhodes, 452 U.S. at 347.  Considering the evidence in the light most

---

2010, he was in an altercation at the jail that resulted in a fracture to his left hand.  (Doc.
32, pp. 3-4).

favorable to Plaintiff, the Court finds that Plaintiff's allegations relating to his confinement in a single cell for a period of three to five months while he was recuperating from a fractured hand fail to establish a constitutional violation.

Plaintiff has failed to set forth sufficient allegations of any constitutional violation committed by the Defendants; therefore, Plaintiff cannot defeat Defendants' qualified immunity defense.  The Court concludes that Defendants are entitled to qualified immunity from any claims asserted against them by Plaintiff in their individual capacities.

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that Defendants' motion for summary judgment in their favor on any and all claims asserted against them by Plaintiff in this action is due to be **GRANTED** and hereby recommends that such claims be **DISMISSED with prejudice.**

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this 11th day of December, 2012.


                              s/WILLIAM E. CASSADY
                              UNITED STATES MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. §636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. §636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[9] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. §1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[9] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).